Good morning, Your Honors. May it please the Court, my name is Arthur Campbell-Cook. I represent Rogelio Flores-Abarca in the case of Flores-Abarca v. William Barr. Your Honors, this is an immigration case where Mr. Flores-Abarca, a Mexican national, seeks relief from this Court, and this Court can give him relief in that he is eligible to adjust his status under Section 245I of the Immigration Act with or without the firearms conviction remaining in place. He is also eligible to apply for cancellation of removal if the firearms deportability ground is vacated by this Honorable Court. The facts I believe are undisputed are that Mr. Flores-Abarca is a Mexican national who entered the United States without admission in 1988 at the age of five. He came with his parents. His parents later became lawful permanent residents of the United States, and he has remained with them and his brothers. His parents now both are critically ill, one of them having a bipolar disorder. He takes care of them. In 2003, in 1996, his father filed an application for him, an immigrant petition, under 245I of the Immigration and Nationality Act. That being a preference category requires a wait of a considerable length of time for an immigrant visa to become present. In 2003, he was convicted for Is that misdemeanor Oklahoma offense? That is correct, Your Honor. In 2015, the Immigration Service initiated removal proceedings and then filed the notice to appear with the Immigration Court. In the Immigration Court, the Immigration Judge pre-termitted Mr. Flores-Abarca's application for cancellation of removal on the basis that he was ineligible due to the firearms conviction. This then went on appeal to the Board of Immigration Appeals. While it was at the Board of Immigration, sorry, the Board of Immigration Appeals came back with a denial, and in that denial, they stated and emphasized the word any throughout that particular statute. Now, this is of importance to Mr. Flores-Abarca because prior to that decision coming down, the Board of Immigration Appeals had released two previous decisions, one called Matter of Almanza, the other being called Matter of Cortez. In both of those decisions, they changed the statute, changing the conjunction or to the conjunction and, with regards to the grounds of inadmissibility and the grounds of deportability, both of these being separate, Congress deliberately separated them into two different schemes. Grounds of deportability apply only to those who have been admitted into the United States. Grounds of inadmissibility apply only to those who have not yet been admitted. When the Board issued its decision in Flores-Abarca, it emphasized the fact that any alien at any time after admission. Flores-Abarca then raised that as an issue before this court in a petition for review. He also filed a motion to reconsider with the Board of Immigration Appeals. While the Board of Immigration Appeals was deciding that motion to reconsider, Mr. Flores-Abarca's priority date became current for his immigrant petition, allowing him now to file an application for adjustment of status inside the United States. Congress specifically exempted the fact that he entered without permission for Section 245I, Adjustment of Status. The Board of Immigration Appeals said, we are not going to allow you to reconsider. They denied the motion to remark. Flores-Abarca then filed a second petition for review. We do know the procedural history. I know it's intricate, so you can keep going. But maybe you've got an intricate set of arguments for relief. One is the NTA deficiency. The second is this adjustment of status point. And then the more fundamental one, it would seem to me, is that he isn't disqualified. Do you want to tell us which you think is the best argument for relief? Your Honor, I believe the best argument for relief is the case gets remanded back to the Board of Immigration Appeals to reconsider the motion to reconsider that denial. And then he can move forward with the adjustment of status based on the Immigration Act at Section 245I, which he's got no effect on that. The government has already agreed at the very first immigration court hearing that there's no crime of moral turpitude, because the firearm statute doesn't require intent. The motion to reconsider, if you read the regulation, it specifically provides that if you are in a motion to reconsider, you can ask the court to remand. Now, if you look at what the Board of Immigration Appeals says a remand is, it is any new set of facts which would substantially change the outcome of the original decision. It does not require any time. The motion to reconsider requires a time. It is discretionary. We've had fairly strict law. So let's just assume that reversing a denial of a motion to reconsider is an uphill battle. And just for me, focusing on our Chamber's decision, the NTA deficiency argument is an uphill battle. But I'm really intrigued by the 1227 IM argument. So even though that's an uphill battle, because most circuits seem to disagree with you, I'd love to hear you make your best case. If you convinced us of 1227 that this a gun isn't one listed, would we create a split with another circuit, yes or no? I believe we probably would. Which one most sharply? I think it's the Seventh. Okay. Which one? Remind me. I thought you were going to say the Eighth. But the Seventh is what? I don't have a case off the top of my head. Oh. I believe the Seventh has ruled in favor. Because most of the circuits say, well, there's just a heck of a long list here, and so it must be every single firearm offense that's covered. But, Your Honor, then what happens to the statutory rule of interpretation that when Congress makes a specific list, that's the list. You can't expand on it. And when Congress applies... I agree with that. So why have all the courts gone wrong? I have no idea. And, Your Honor, consider this. If I was a bus driver driving a bus with 40 people in the bus on an Oklahoma highway, and one of my passengers happened to have a loaded fire on him without a carry permit, I am responsible and liable under that statute. I am transporting a loaded... It's not that you're responsible and liable. It has to be. We'll hear from the government. But it has to be that you are constructively possessing it, even if they're at the back of the bus. That it's in your power and dominion somehow. But, Your Honor... There's no law that supports that. But how can I possess it if I don't even know it's there? Well, but Oklahoma requires you to knowingly and willfully transport the loaded gun. So I guess the counterargument is, how could a person knowingly and willfully transport a loaded gun and not have constructive possession of it? Without being flippant, Your Honor, if I could move to an example. Every day we download electronic applications onto our electronic devices, to which there is a, I don't know how many thousand page, two point font agreement that we all say, yes, we have read and we have agreed to. We have now knowingly agreed that we understand this and we have acknowledged it. We accept it. Knowingly doesn't always mean that you have actual knowledge. Knowingly also means that you are responsible and you should know, even if you don't. Well, the statute says knowingly and intentionally, though. Look, Your Honor, it says knowingly and willfully. And willfully. And willfully is not the same as having the intent to commit the crime. Willfully is you intend to drive the car. Well, but if you drive the car knowing that a passenger has possession of a weapon, you've got control. You can say, passenger, you've gone as far as you're going with me. You get out, and so you no longer be transporting it. But, Your Honor, if you are driving a car and you have a passenger with a loaded firearm that you're not aware of, you are supposed to have knowledge. That statute doesn't say that. It requires proof of knowledge in order to get a conviction. Your Honor, with respect, I think we disagree on that point. And there's an Oklahoma case on that called Pierce v. State, which discusses this. There aren't many published Oklahoma cases on this statute, but you're saying Pierce v. State talks about the scienter standard for this misdemeanor? Yes, Your Honor. Is it cited in the brief? We can look it up. I'm just saving you time. It's Pierce v. State, Your Honor. And here we go. It's 275 Pacific 393 Oklahoma 1929. Discussing possession, intent, knowledge. But, Your Honor, I would urge the court to really seriously consider this because we're at the beginning of a very slippery slope on this. Where does the congressional list end? If Congress makes a list, it makes a list. If Congress has changed that list over the course of history, which it has done, it has still made it specifically limited. If Congress had wanted every single statute possible related to firearms to be applicable, it just would have said any firearms offense. If they'd wanted it to apply to people who hadn't been admitted and people who had been admitted, just like the drug convictions and just like crimes of moral turpitude, they would have put it into both sides of the statute. The inadmissibility side and they would have put it into the removal side. They chose not to. We asked you both to come prepared to discuss Muscarello. Is that germane to this discussion? Yes, it is, Your Honor. Muscarello, very much so. Because there you have two different defendants. One has loaded firearms into a bag and is actually carrying them. The other person has a gun in a glove compartment and he's carrying. Carry does not equate to transport. And again, we go back to the bus driver with a bus full of people. The bus driver has no intention. That is your argument. It is my argument. And just curious why, because you're very prepared in this area and you know it well. Why didn't you say Muscarello originally? Oh, Your Honor, I didn't actually look at Muscarello. I didn't find it. Go ahead with your argument. So carry, the Supreme Court has said carry does not mean transport. That's correct, Your Honor. It does not mean transport. And then that ties in with what Congress wrote. They didn't include transport. And in fact, with the Oklahoma statutes, there's a specific offense of carrying a firearm, which is not the same as transporting. And that's at 1289.6. Whereas, transporting is at 1289.13. So why are they separated if they are the same? Respectfully, they're not. Congress understands this. In the federal statutes, they talk about transporting, they talk about carrying, they talk about possessing. These terms all have their own meanings. And Muscarello— If you prevail on this argument— Sorry, Your Honor? If you prevail on this argument, that it isn't a qualifying conviction, then what's—then what happens? Your Honor, then the case goes back to the Board of Immigration Appeals, and Mr. Flores-Barker is eligible either to pursue cancellation of removal or pursue an adjustment of status under 245I. He can do either. And if I was advising him at that stage, I would tell him to go with the 245I adjustment of status because it is an easier road to walk down. Okay. You have time for rebuttal or 50 more seconds? Your Honor, also, with 15 seconds to go, you asked about the service of notice to appear and whether that is deficient or not. The Immigration Act provides that— I guess I specifically asked, is it waived by virtue of appearing anyway under our chamber's decision? I don't think it is, Your Honor, and the reason why I don't think it is is because it's subject matter jurisdiction. The Immigration—Board of Immigration Appeals recognizes it's subject matter jurisdiction. They deliberately separate it. You can have a bond hearing without a notice to appear being filed because you get subject matter jurisdiction under the Act, under Section 236 of the Immigration Act. You can't proceed with removal proceedings because you have no authority. That has to come. You've got about four circuits against you on that point, though. Yes, Your Honor. This, again, is going to be a circuit split. Okay. Thank you very much, Your Honor. Lightning note. Ms. Miles. You are from the Office of Immigration Litigation? I do, yes. Good morning, Your Honors. I'm Erica Miles for the Attorney General. The Board correctly determined that Mr. Flores-Ebarca has been convicted of a firearms offense under the INA's definition, and therefore he is statutorily barred from cancellation of removal. And it also did not abuse its discretion in denying reconsideration where he failed to raise an argument he could have raised and raised for the first time on reconsideration. And his motion to remand, which must be assessed under motion to reopen standards, was untimely, and he failed to show exceptional circumstances. And it's worth noting this Court lacks jurisdiction to review the Board's assessment to not exercise its sua sponte authority to reopen and remand for that adjustment application. So adjustment of status and his eligibility is not before this Court whatsoever, and just wanted to make that clear at this point. To dive in, you seem most interested in the firearms conviction assessment in this case. And the Board's definition, or excuse me, the INA definition, as the Board assessed it, it's plain on its face, and two circuits, the Fourth and the Ninth, agree that it's plain on its face that the inclusion of additional terms such as offering for sale, where possession is not even required, a gun doesn't need to be anywhere nearby, but offering it for sale is one that it's included. The Fourth, the Ninth, and the Board think that this statute is plain on its face, the full panoply of firearms offenses are covered by the language of the statute. They all use that phrase, full panoply of firearms, which implies any firearm offense counts. Yes. The second circuit — But, you know, I have a lot of problems with that. One, why — you know, we are supposed to be textualists, and Congress wrote out each specific one and left out transporting, which under State law and Federal law is always a separate crime. So it seemed like if the text says specific crimes and doesn't say all, as they did more in the drug-controlled substance area, Congress meant what it wrote. And then you sort of think, well, where did the other circuits go wrong? But the Fourth and the Ninth, when they made the observation that it's comprehensive, they still each time placed the conviction in one of those explicit. Yes? Yes. So here we've got one that doesn't fit in one of the explicits. It does, because possession is included within transport. So transport is included within possessions, which you're saying? Yes. Okay. But the Supreme Court says not so in Muscarello. In Muscarello, though, if you read carefully, the Supreme Court, it's looking at a very different statute here. Let's start with our Oklahoma statute. It's transporting a singular, a loaded pistol. And in Muscarello, the Supreme Court says that the statute it was looking at, the Federal statute, implies transport, implies movement of goods in bulk. So its understanding of transport in the statute it was looking at when it was comparing whether or not transport, which is a companion statute to the carry statute in that particular Federal offense, transport has a different meaning in the context of the statute that the Supreme Court was looking at. Again, transport implies movement of goods in bulk. So the Supreme Court's entire decision in Muscarello was limited to that statute when they say transport isn't carry. Yes. But in this statute, carry includes— Possessing is carrying because, again, the Oklahoma statute says it is unlawful to transport a single loaded pistol. Your best authority for that, you said, was also the Supreme Court, the Bass decision that transporting necessarily requires an element of possession. Yes. Absolutely. But, Counsel, that was a very important proposition. That language doesn't appear in the Supreme Court Bass decision, does it? The proposition exists. Oh, Counsel. Okay. Did you attribute direct language to the Supreme Court? No. The board did, though, in its reasoning, which— That's incorrect. Which gets me to the second— Is that incorrect? It's not incorrect. I think the board extrapolated, and I don't think it was wrong as part of its analysis, which gets me to my second point. If you don't agree that the plain language of the statute is entirely clear, if there's some ambiguity, especially given the sister circuits here, because we have the Seventh, the Second, excuse me, and the Eighth that are doing what I'm asking right now in the to determine that this is ambiguous enough that under Chevron Step 2, the board's analysis, the board's assessment of this statute is eminently reasonable. I'm not—I'm just giving you the straightest chance to persuade me, because I don't see any ambiguity. I see a list of offenses, and I don't see transporting. I see the Supreme Court is saying transporting is different. The Federal Criminal Code says it's different. The citation to Bass, whatever you're saying, your brief may be accurate, but it doesn't stand for the Supreme Court having said it. So I don't see ambiguity here. And why would the Congress have been able to write any drug offense and not written any firearm offense? Congress cannot imagine every—all 50 states, what types of firearms offenses specifically, all of the language that it must include. It cannot be charged with covering every offense. And you look at the— It didn't expand it for them. It did expand in 1988 to cover, and as I might point out, my, you know, the one that stands out the most is the offering for sale, which is so attenuated from something as serious as carrying and possessing at times, especially if the weapon is loaded. Offering— That shows Congress knows how to reach further. They can — over time, they keep adding. But as to transporting, we're just going to assume that's in there? I think given that this statute in particular, as you — as all of you have recognized, that constructive possession is an element of transporting. And that necessarily means possession, which is a definitive term, explicit term in this case. I've identified that. Well, you— I thought Fifth Circuit published law was the opposite of that, that we have repeatedly said, if you're in a car and you pick up a friend who's got a gun, you don't constructively have possession of that. No. I'm sorry. I misspoke, if that's what you understood. Is that correct? I was referring to the Oklahoma statute and interpretation of the Oklahoma statute as requiring constructive possession. Okay. What's your case for that? The Oklahoma says to transport requires constructive possession. That would be very favorable to your position if you've got an Oklahoma case. The Board cited it in its Flores-Abarca decision, and it's in our brief as well. Pardon me for not having it. Well, that's all right. If it's there, we'll find it. It is in both the Board's decision and in our brief, the Oklahoma cases. And the Pierce case that counsel pointed out was actually a possession case, not a transport case. But the cases that we say and that the Board also relied on under Oklahoma law recognize that constructive possession is part of transporting. So therefore, transport, which includes constructive possession in Oklahoma, meets the definition of possession in the INA. In a very simple way, if I pick up someone, say in a bus or an SUV, and they've got a loaded gun, and they sit in the back seat, what's the Fifth Circuit law that says I, the driver, am constructively possessing power and dominion to control that gun he's got? What's the case? I'm not pointing to a Fifth Circuit law that says this. Instead, what I'm pointing to is, again, the interpretation of this Oklahoma statute, which is what governs how a state assesses its own statute. You can only be convicted of the misdemeanor offense if you have power and dominion over the gun. And it must be knowing and willful, as was discussed. Knowing and willful, that's separate. But you're saying there's an Oklahoma case that says the person convicted of the misdemeanor has to have... On the bus. No, I'm not saying that. Not bus. Just power and dominion over it. Constructive possession. There's no specific case, given the facts that you're raising, about an individual getting on the bus, and the bus driver knows that that individual has a gun, and then the individual goes to the back of the bus. There's no case for that. But the transporting here is a land-borne motor vehicle, and so it could be a bus, for example. It must be knowing and willful for the person doing the transporting, and the gun must be loaded. And again, we're talking about a single gun, not a bulk amount of guns like the Muscarello case is discussing. So given the Sister Circuit's assessment here, if I could just give you examples of what they have found being covered by the statute. The Fourth Circuit found a false statement in attempted acquisition of a gun is enough to be an involvement of enabling a purchase. And in the Ninth Circuit, it was delivery of a gun. In the second, it was exporting. These are all words that are not within the statute. And then, of course, the Eighth Circuit, as you recognize, would be the deepest split, if you would go the other way, because it is transporting a loaded firearm, and that was under a hunting and fishing recreation law that they determined that that was enough to qualify as a firearms offense, barring cancellation of removal. So, you know, we have to make a categorical analysis of 1227 and whether there can be a conviction under Oklahoma law that would not fall under 1227. Yes. All right. What do you say about this case, Wright, U.S. v. Wright? It's one of our cases. In that case, the owner of the car was driving. He had a passenger who owned the car. The driver didn't own the car. The passenger was the owner of the car. And the passenger had a loaded gun in the glove compartment of the car. Now, in that situation, we said that that was not possession. He didn't possess or carry the firearm because he didn't have knowledge of it. He didn't have the power to control it. So why wouldn't that destroy the categorical analysis between the two statutes? Well, the statutes are different, for one. And as you just said, the statutes are different, for one. And you have to look at how Oklahoma examines its own statute. So that's one answer. But additionally, you just mentioned that it was not determined to be a possession offense for the driver because he lacked knowledge, whereas here a conviction is required, that they must willfully and know that they're transporting. So whether or not the passenger, if we were to take your example there, if that driver knew that that gun was in the glove box and that the passenger put it there, that the driver was driving that gun around, that very well could have changed the outcome. And here you need knowledge. In my example, the driver knew that the gun was in the glove compartment. He just had no power to remove the gun. Okay. I'm sorry, but you said he didn't know, and so that's why I spoke to that. The dominion and control aspect is different statute by statute in how a state interprets its own statute. And here, Oklahoma's case law— under this Oklahoma statute, that would fall outside the generic Federal statute. Well, here, the generic Federal statute, the board has said includes transport offenses. So you have to decide whether or not you agree. And then the match would be whether or not the Oklahoma transport matches the board's assessment that transporting, which the board said includes constructive possession. You don't have to show — you don't have to meet the categorical test, then? This is meeting the categorical test if you take — you first have to agree that the generic definition includes transport. And then you would match up Oklahoma to the generic definition, which the board says includes transport, so that the statute — pardon me — the statute that you're talking about is not part of the categorical assessment in this case because it's the INA's definition of a firearms offense as the board views it, which includes transport, and whether or not Oklahoma transport meets the firearms definition. We have lots of Supreme Court law that says that even in immigration cases, when you compare the statute like that, you've got to use the categorical approach. I agree. And counsel doesn't disagree that if you were to find that transport is included in the definition, then you have a categorical match. Here, the dispute is about what is the definition to use for the matching. What is the Federal definition? But everyone agrees, then, if transport is included, that there is a categorical match. Mr. Cook says that Muscarello cut strongly in his favor. I understand that. What's your take? My take is — I think you disagree. We disagree strongly because those statutes, when you look at the carry — use and carry statutes, and then you look at the transport statutes, which are Federal statutes together, this offense fits much more within the carry type of offenses discussed, and not within the transport discussed in the Muscarello case, because the Muscarello case explicitly says that transport implies — the language is specifically — implies movement of goods in bulk. Here we have a single gun is enough to be transported, and it's just like the facts and the scenario discussed for when they determined that having a gun in the car was the equivalent of carry for purposes of that Federal statute. Very quickly, I will address the other issues in this case about — his argument is that he cannot be barred because he was never admitted, and this statute, in order to be determined removable, requires that you have been admitted. But this Court has already addressed this exact question and read the statute, the cancellation bar language as being unambiguous, that it's meant to read convicted of an offense described under. And the reason that it added that word, but that it's — that the statute is still unambiguous, is because it's impossible to be convicted under the removability statute or the inadmissibility statutes. This — this Court's Nino decision forecloses his argument, and he entirely waived any challenge to the reasoning behind Nino because he did not even raise it in his opening brief or recognize that you have settled law on this issue. And for that same reason, his raising it to the Board for reconsideration, where he could have raised it, didn't recognize the settled law, both — you know, recognized only Board, but not this Court's earlier decision. The Board clearly did not abuse its discretion in denying reconsideration on that point. As to his challenges about whether or not there was proper process and proper jurisdiction vesting, those are the two he essentially raises, trying to challenge that his removal proceedings shouldn't have even happened. They are, as you recognize, unexhausted and waived. And they are also belied by the record. Any of his procedural challenges, which have to do with whether or not DHS properly served him or properly filed the notice to appear with the Court, had to be raised. And this Court's Chambers decision stands for that proposition that he had an opportunity. He actually admitted to the immigration judge that his client received the notice to appear and never challenged it. His first time — he didn't even challenge it on appeal to the Board. The first time he brought it up was before this Court. As for the Pereira decision, his reliance on that for whether or not jurisdiction vested, that in and of itself — Pereira — this Court has even recognized how narrow Pereira is in its Mauricio Benitez decision. And Note 1, this Court fully recognizes the narrow holding of Pereira, which is confined to whether or not the stop-time rule for cancellation of removal can be invoked. It does not at all — Roberts are construing it broadly, though. I'm sorry? Some courts, Federal courts, are construing it more expansively. But you're saying we have — we've said it's not limited. No Federal court has construed it expansively to cover whether or not jurisdiction vests. No court has. No court. The Second, the Sixth, the Eighth, and the Ninth all defer to the Board's decision in Bermuda's Cota. And the Seventh Circuit took a different analysis, instead looking at this as a claims processing rule that needed to be raised in a timely manner. But the outcome is still the same. That has nothing to do with whether or not the NTA being filed in the immigration court could somehow be defected for purposes of jurisdiction vesting. So every court has come out that an NTA lacking the time or location of a hearing is still enough to vest jurisdiction in the immigration court. All of the other cases in the plethora of 28J letters that he filed, none of them addressed this issue. And, in fact, they all support, just like the Pereira decision itself supports the jurisdiction vested, they all support it because they all either remanded or found what happened to be appropriate. Not a single court or the Board or even the Supreme Court questioned whether jurisdiction was appropriate despite the lack of the time or place of the hearing being listed in the notice to appear. If the Court has any other questions, unless you have any other questions, we ask that you deny and dismiss the petition for review. Thank you. Thank you, counsel. Yep. Thank you very much, Your Honor. I'd like to start with a point on the remand being untimely. The remand formed part of a motion to reconsider. The motion to reconsider was filed on time within the required 30 days. The regulation specifically mentions motions to remand, and it specifically allows for it. The Board of Immigration Manual, Practice Manual, specifically states what a motion to remand is according to the Board of Immigration Appeals. And that includes new evidence that would substantially change the outcome of the case below. And it specifically says there is no time limit on a motion to remand. And that's at the Board of Immigration Appeals Manual at 5.8. Your Honor, with regards to the transporting and carrying of a firearm, the Board of Immigration Appeals in the Flores-O'Barker decision specifically states transporting is not included in the statute. They specifically state they are going beyond the statute, and they are going to, as the Court correctly said, apply the full penalty of immigration — sorry, of firearms cases. So whatever firearms case we can catch within the net, we are going to apply it. As Your Honor, Judge Davis correctly said, it's a categorical approach. It's supposed to meet the elements of the crime as compared to the elements in the statute. Ms. Miles said that if we look at the Oklahoma cases, they require dominion and control. They require constructive possession. I respectfully disagree with Mrs. Miles's position, but those positions are both briefed quite well in the briefs that were submitted, Your Honor. So if we are — if there's a compelling argument textually and, let's say, of or do you think the other circuits were still locating the convictions they were looking at within articulated defenses, and they had dicta about panoply, this means awfully a lot. What is it? Is there a split? I mean, just be as objective as possible here. Well, Your Honor, I think that Flores-O'Barker, being a precedent decision from the Board of Immigration Appeals and being relatively new, is going to be the beginning of that discussion. I think that the various circuits are going to look at this very closely, and they're also going to look very closely at how far do we want to let the agency run with the legislation that's written by Congress? Do we give it Chevron deference, or does the unambiguous statute actually mean what Congress says it means? And do we apply just the unambiguous statute? Because I respectfully submit it's a specific list. You can't go beyond the specific list. If Congress had wanted you to go beyond the specific list, as we said earlier, they just would have said anyone convicted of any firearm offense. That's it. Is that essentially what they said in the controlled substances area? That's essentially what they said with controlled substances and also with crimes involving moral turpitude, Your Honor. You get convicted of one of those crimes, that's it, it's gone. But not guns. And their brief says, well, why, what's the logical distinction? And would you say a man like Mr. Awad in the Eighth Circuit who had a loaded hunting rifle, he's not as deportable just intuitively as someone who actually possesses a gun, a loaded gun? Your Honor, with most of these cases that you find, the respondent for the immigration proceeding or the defendant with a criminal proceeding, the same person, they all said, we have possession. And I think that's the distinguishing factor. In all of them, the person says, yep, it's my gun, I have possession of it. I have dominion and control over that hunting rifle. And that really is what distinguishes this, which goes back to the analogy of the bus driver or, as the Honorable Judge Davis pointed out, the man who picks up a friend in his SUV who's got a loaded firearm on him. Are we going to hold them accountable? Your Honor, also, I would like to address subject matter jurisdiction again. 20 seconds. You can't waive subject matter jurisdiction. The court either has it or it doesn't have it. And the Fifth Circuit has said in Volvo Trucks versus Crescent Ford, you can raise it at any time. The moment you realize it, you can raise it, because the court either has it or it doesn't. Your Honor, thank you very much for allowing us the opportunity to come and argue before you. It's an interesting issue, and you both have argued it very well. It's helpful to us. Thank you. Final case of the day, 19-601-3215.